**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

ROBERT A. DIERKS                                                                            PLAINTIFF

v.                                    Case No. 4:12-cv-00382-KGB

DOES, *et al.*                                                                          DEFENDANTS

<u>OPINION AND ORDER</u>

Plaintiff Robert A. Dierks brings this lawsuit pursuant to 42 U.S.C. § 1983 regarding the conditions of his confinement at the White County Detention Center where he was a pretrial detainee and regarding the alleged wrongful conduct of certain individuals who were involved with his state criminal case.[1]   Before the Court is the motion for summary judgment filed by separate defendants Deputy Seanard, Captain Edwards, White County Circuit Court Clerk Tami King, Sheriff Ricky Shourd, Deputy Madden, Faye Cooper, and Steven Cochran[2] (collectively "White County Defendants") (Dkt. No. 40).   Mr. Dierks has not responded to the motion, and the time for filing a response has passed.   For the following reasons, the motion for summary judgment is granted (Dkt. No. 40).   Mr. Dierks's claims against the White County Defendants in both their official and individual capacities are dismissed with prejudice.

I.      **Factual Background**[3]

In December 2011, Mr. Dierks was arrested for failing to register as a sex offender by separate defendant Steve Cochran, an officer with the White County Sheriff's Department.   Mr.

---

[1]   Mr. Dierks also named as defendants White County Circuit Judge Robert Edwards and public defender Ellen Reif.   The Court previously entered an Order granting Judge Edwards's and Ms. Reif's motion to dismiss (Dkt. Nos. 31, 35).

[2]   Mr. Dierks's complaint named separate defendant Cochran as Steve "Cockran" (Dkt. No. 7, at 7).

[3]   Pursuant to Local Rule 56.1 of the United States District Court for the Eastern and Western Districts of Arkansas, because Mr. Dierks failed to respond to the pending motion, all material facts set forth in the statement filed by the White County Defendants are deemed admitted (Dkt. No. 42).

Dierks was booked into the White County Detention Center, bonded out, and released (Dkt. No. 42, ¶ 8; Dkt. No. 42-1, at 6-8).  Mr. Dierks missed his court appearance before White County Circuit Judge Robert Edwards.  On April 4, 2012, he was arrested a second time by Mr. Cochran and booked into the White County Detention Center (Dkt. No. 42, ¶ 9; Dkt. No. 42-1, at 7-8). Mr. Dierks in his complaint claims that Mr. Cochran arrested him without reading him his rights and without a warrant (Dkt. No. 7, at 8).  Mr. Dierks testified at his deposition that he was arrested without being read his *Miranda* rights and without a warrant during the first arrest, but he stated that the second arrest was made pursuant to a warrant Judge Edwards issued after Mr. Dierks missed his court appearance (Dkt. No. 42-1, at 7-8).  Mr. Dierks was incarcerated at the White County Detention Center from April 4, 2012, to June 5, 2012 (*Id*. at 2-3).  He did not have any personal contact with Mr. Cochran after he was booked into the White County Detention Center (Dkt. No. 42, ¶ 9; Dkt. No. 42-1, at 12-13).

Mr. Dierks named as a defendant "Clerk of Court for Judge Edwards," alleging that Judge Robert Edwards's clerk twice refused to file a motion of discovery (Dkt. No. 7, at 6, 8). The Clerk of this Court issued summons to the White County Circuit Clerk (Dkt. No. 21). Separate defendant Tami King, White County Circuit Clerk, answered Mr. Dierks's complaint in the White County Defendants' collective answer (Dkt. No. 18).  At his deposition, Mr. Dierks testified that he intended to sue Judge Edwards's personal clerk, not the elected clerk for White County, if those individuals were not the same (Dkt. No. 42-1, at 4-5).  Mr. Dierks alleges his complaints against the Clerk are that he does not know if paperwork was filed because he never received copies of the paperwork he tried to file with the White County Circuit Court (*Id*. at 5).

Mr. Dierks brings this action against Officer Cooper based on allegations regarding food and food preparation.  Mr. Dierks states in his complaint that Officer Cooper cooked with salt

added to corn bread, served salt packets, and served morning breakfast with out-of-date milk (Dkt. No. 7, at 9).  In his deposition, Mr. Dierks explained he sued Officer Cooper due to the "hotness" of the food and over the use of salt and tomatoes (Dkt. No. 42-1, at 35).  Mr. Dierks claims he is allergic to tomatoes and breaks out in hives if the food he eats has been prepared with tomatoes, ketchup, or tomato paste.  Mr. Dierks said he was never present during food preparation at the White County Detention Center; he confirmed during his deposition that his claim that the food was cooked with tomatoes was based on the taste of the food and his knowledge of working in a kitchen (*Id.* at 36).  Mr. Dierks never had to go to the jail doctor for his alleged tomato allergy but submitted a medical request that he did not want to have tomatoes or salt in his food (*Id.* at 36-37).  He believes he also sent this request to Captain Edwards.

Mr. Dierks asserts that he was not issued cleaning supplies by any of the guards for the table tops (Dkt. No. 7, at 9).  He testified that he put in a request for a rag for cleaning off the steel table tops on which the inmates ate, but he never received a rag or cleaning supplies for the table tops (Dkt. No. 42-1, at 18-19).  He admits the inmates in the pod were given cleaning supplies for the toilet, a brush, and a mop but states he was not told what chemicals were in these cleaning supplies.  He maintains he was never given cleaning supplies to use specifically on the table tops (*Id.* at 19-20).  Mr. Dierks claims harm in that he does not know that the table at which he ate was clean, and he worried about his health.  However, he stated he never had to see the jail doctor or nursing staff for any problems with regard to his sanitation concerns (*Id.* at 20).

Mr. Dierks also alleges that religious services were broken up "for cleaning supplies" and that prayer services were broken up "all the time for mop buckets and brooms" (Dkt. No. 7, at 4, 9).  He stated that the men in his pod would hold a prayer service with an outside minister or church representative and that the guards would interrupt the prayer through noise created by

3

delivering a mop bucket, broom, and cleaning supplies to the pod (Dkt. No. 42-1, at 13-14).  Mr. Dierks admits he did not participate in the prayer service but instead prayed at his own bunk.  He admits he was not limited to praying only during the time the other inmates held their prayer service but contends he tried to pray at the same time (*Id*. at 14-15).  Mr. Dierks admits the interruption was very brief, lasting only about a minute.  He said during his deposition that officers also delivered cleaning supplies on days when prayer services were not being conducted (*Id*. at 16-17).  From the Court's review of the record, it appears that Mr. Dierks named Officer Madden as a defendant who allegedly disrupted the prayer service.  However, Mr. Dierks did not know the names of any other officers that allegedly disrupted the prayer service (*Id*. at 15).  He said he filed a grievance about the guards not wearing name tags.

Mr. Dierks also alleges no freedom of choice for phone services.  He claims he only had access to one phone card and one phone company to use to call out (Dkt. No. 7, at 4, 9).  He was allowed to purchase phone cards while incarcerated but complains that he was denied the choice to purchase cards at cheaper prices from other phone companies (Dkt. No. 42-1, at 9-10).  He claims that other inmates used his phone cards and that he stopped ordering phone cards for his own safety (*Id*. at 40).  He could call collect from the jail but claims he could not write down phone numbers to call collect because, during a portion of his incarceration, he had no pencil and paper to write his friends and family (*Id*. at 10).

Mr. Dierks alleges that Captain Edwards opened and read his legal mail without him present, including mail with W-2s and tax forms, and he claims that some court papers turned up missing (Dkt. No. 7, at 9).  Mr. Dierks testified at his deposition that he sent a letter to a former employer requesting his W-2s and received a letter returned marked as "return to sender."  Mr. Dierks claims the letter was opened when he received it and that Captain Edwards told him he

was abusing the legal mail system (Dkt. No. 42-1, at 21).  However, Mr. Dierks admits he does not know who physically opened this letter (*Id*. at 21-22).  Mr. Dierks also claims some of his mail containing court documents was opened and that court forms were missing, but he admits he does not know which officer specifically opened his mail (*Id*. at 22-23).  He complained to Captain Edwards.  Captain Edwards said he would investigate, but Mr. Dierks never heard anything further (*Id*. at 23).  Mr. Dierks testified that he had to request that several forms for filing this complaint be re-mailed to him, but he said this did not impair his filing this lawsuit (*Id*.).  Mr. Dierks does not claim that the White County Defendants refused to send out his mail or that they censored his mail, but he does claim some of his mail was not responded to (*Id*. at 24).  He received stamped envelopes for legal mail twice a week while he was indigent but claims he was denied writing supplies (*Id*. at 33-34).  He also claims he was denied stamped envelopes after Captain Edwards told him he was abusing the legal mail system (*Id*. at 34).  However, Mr. Dierks admitted it did not matter at the time because, at the time, he was able to purchase writing supplies and stamps, after receiving commissary money from his family the fifth or sixth week of his incarceration, although he had been requesting writing supplies and stamps from day one (*Id*. at 32-33).

Mr. Dierks makes clear his allegations regarding grievances are directed against Captain Edwards.  He said that Captain Edwards told him that he would be locked in a one-man cell if he wrote one more grievance or request (Dkt. No. 42, 1 at 34).

Mr. Dierks testified in his deposition that Officer Seanard did not do anything wrong, other than sending back his grievances with comments he did not like and calling him guilty "in a roundabout way" (Dkt. No. 42-1, at 31, 39).

5

Mr. Dierks said he was not physically attacked by any officer while in the White County Detention Center (Dkt. No. 42-1, at 32).  He never required medical treatment related to any of his complaints against the officers at the White County Detention Center (*Id*.).  He had no physical problems related to his incarceration (*Id*. at 43).

Mr. Dierks believes that Sheriff Shourd is responsible for his employees and their actions (Dkt. No. 42-1, at 28).  In addition, Mr. Dierks said he could not get Sheriff Shourd to answer a grievance complaint (*Id*. at 28).  He mailed a grievance form to Sheriff Shourd and does not know if Sheriff Shourd received the grievance, but he never received a response (*Id*. at 28-29).  Mr. Dierks never spoke face-to-face to Sheriff Shourd but claims he would have dismissed the lawsuit entirely had Sheriff Shourd come to see him instead of "trying to shove everything underneath the carpet" (*Id*. at 30-31).

At his deposition, Mr. Dierks said he is not seeking money damages.  Instead, he is seeking procedural changes in White County for the benefit of the county and "people who get locked up there" (Dkt. No. 42-1, at 30).  Mr. Dierks claims all defendants named in his lawsuit violated the policies and procedures of White County (*Id*. at 41-42).  Mr. Dierks testified he has no problem with the actual policies and procedures of White County, but he believes the individual defendants failed to follow them.

## II.     Summary Judgment Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).

"The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).  However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008).   "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III.   Analysis

"To state a claim under [§ 1983], a plaintiff must allege (1) that the defendant acted under color of state law, and (2) that the alleged conduct deprived the plaintiff of a constitutionally protected federal right." *Van Zee v. Hanson*, 630 F.3d 1126, 1128 (8th Cir. 2011).  A supervisor can be liable for a subordinate's misconduct only if "he directly participated in the constitutional violation . . . or if his failure to train or supervise the offending actor caused the deprivation." *Tilson v. Forrest City Police Dept.*, 28 F.3d 802, 806-07 (8th Cir. 1994) (citations omitted).

Qualified immunity shields government officials from liability in a § 1983 action sued in their individual capacity unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. *Mitchell v. Shearrer*, 12-1931, 2013 WL 4793107 (8th Cir. Sept. 10, 2013).  Qualified immunity involves the following two-step inquiry:  (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of

the defendant's alleged misconduct.  *Id.*; *see Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that courts may exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first).

An official-capacity suit is the equivalent of a suit against the governmental entity of which the individual is an agent and imposes liability on the entity which the individual represents.  A "proper analysis" of municipal liability "requires [the separation of] two different issues when a § 1983 claim is asserted against a municipality:  (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation."  *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).  A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents on a theory of *respondeat superior*.  *Andrews v. Fowler*, 98 F.3d 1069, 1074 (8th Cir. 1996).  Claims against a municipality require proof of an official policy or custom as the cause of the constitutional deprivation.  A plaintiff must include allegations, references, or language by which one could infer the conduct alleged resulted from an unconstitutional policy or custom.  *Crumpley–Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citing *Doe v. Sch. Dist. of Northfolk*, 430 F.3d 605, 614 (8th Cir. 2003)).

White County Defendants argue that Mr. Dierks cannot show any constitutional violation, that he cannot show any personal involvement in a constitutional violation by Sheriff Shourd, Ms. King, Officer Cooper, Officer Seanard, or Mr. Cochran, and that all White County Defendants are entitled to qualified immunity and summary judgment on Mr. Dierks's individual capacity claims.  White County Defendants further argue that there is no official-capacity liability because Mr. Dierks has not shown a constitutional violation or that a policy or custom

was the moving force behind the alleged constitutional violations.   As a preliminary matter, the Court agrees with White County Defendants as to Mr. Dierks's official-capacity claims.   Mr. Dierks admits that he does not have a problem with the policies and procedures of White County, but he believes the individual defendants failed to follow them (Dkt. No. 42, ¶¶ 31-32).   Such an admission cannot support a suit against the White County Defendants in their official capacities. *Doe v. Washington County*, 150 F.3d 920, 922 (8th Cir. 1998) (determining that a governmental entity may be held liable for the unconstitutional acts of its officials or employees only when those acts implement or execute an unconstitutional county policy or custom).   Because Mr. Dierks has not and cannot allege that a policy or custom was the moving force behind the alleged constitutional violations in this matter, the White County Defendants are granted summary judgment in their favor on his claims against the White County Defendants in their official capacities.   The Court now turns to the White County Defendants' arguments as to Mr. Dierks's individual-capacity claims

## A.    Mr. Cochran

Mr. Dierks bases his claims against Mr. Cochran on his contention that he was arrested without being read his *Miranda* rights and without a warrant.   The Court will analyze each of these claims.   Mr. Dierks testified that his claims against Mr. Cochran have nothing to do with the conditions of confinement.   White County Defendants argue that Mr. Dierks's claims against Mr. Cochran are barred by collateral estoppel and *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the Supreme Court held that, if judgment in favor of a prisoner in a § 1983 suit would necessarily imply the invalidity of his conviction or sentence, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.   *Id*. at 486-87.   However, where a successful action will *not* demonstrate the

invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit. *Id*. at 487. The Court stated, for example, that a suit for damages for an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the plaintiff's conviction. *Id*. at 487 n.7. Because of doctrines like independent source, inevitable source, and harmless error, such a § 1983 action would not *necessarily* imply that the plaintiff's conviction was unlawful. *Id*. The Eighth Circuit has extended this reasoning to Fifth Amendment claims challenging the voluntariness of confessions in view of the Supreme Court's application of harmless error to the admission at trial of coerced confessions. *Simmons v. O'Brien*, 77 F.3d 1093, 1095 (8th Cir. 1996); *see Arizona v. Fulminante*, 499 U.S. 279, 310 (1991).

White County Defendants argue that, if the Court were to find that Mr. Dierks's constitutional rights were violated by Mr. Cochran, then Mr. Dierks's sentence would "potentially be invalid" (Dkt. No. 41, at 4). *Heck* bars § 1983 claims that, if successful, would *necessarily* imply the invalidity of the plaintiff's sentence. The Court finds that it is unnecessary to consider *Heck* as to Mr. Dierks's claim that he was not read his *Miranda* rights, however, because this is not a cognizable claim in a § 1983 action. *Warren v. City of Lincoln, Neb.*, 864 F.2d 1436, 1442 (8th Cir.) (en banc), *cert. denied*, 490 U.S. 1091 (1989). "The remedy for the alleged *Miranda* violation is the exclusion from evidence of any compelled self-incrimination, not a civil rights action." *Brock v. Logan Cnty. Sheriff's Dep't of Arkansas*, 3 F.3d 1215, 1217 (8th Cir. 1993) (per curiam); *see also Hannon v. Sanner*, 441 F.3d 635, 637 (8th Cir. 2006) (reaffirming *Warren* and *Brock*). Accordingly, Mr. Cochran is entitled to summary judgment with regard to Mr. Dierks's claims that he was not read his *Miranda* rights.

Likewise, the Court need not decide whether *Heck* applies to Mr. Dierks's allegations that he was arrested without a warrant because the Court finds that Mr. Dierks has not created a genuine issue of material fact that his Fourth Amendment rights were violated. Mr. Dierks in his complaint states that he was arrested twice without a warrant by Mr. Cochran. However, he testified at his deposition that his second arrest at his home was made after Judge Edwards "put out a warrant" for Mr. Dierks's failure to appear in court. Therefore, his claim with regard to his second arrest at his home is without merit.

As to Mr. Dierks's first arrest at the police station, a warrantless arrest in a public place *with* probable does not violate the Fourth Amendment and, therefore, does not give rise to a § 1983 claim. *Mitchell v. Shearrer*, 12-1931, 2013 WL 4793107 (8th Cir. Sept. 10, 2013) ("The warrantless arrest of an individual in a public place upon probable cause, however, does not violate the Fourth Amendment.") (citing *United States v. Watson,* 423 U.S. 411, 423–24 (1976)); *Hannah v. City of Overland, Mo.,* 795 F.2d 1385, 1389 (8th Cir. 1986). Further, "an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011). Mr. Dierks does not claim, and there is nothing in the record to suggest, that his first arrest at the police station was without probable cause.

White County Defendants' motion briefly mentions collateral estoppel. Collateral estoppel, or issue preclusion, would bar Mr. Dierks's claim against Mr. Cochran if the claim was necessarily litigated and decided against Mr. Dierks in his state-court criminal proceedings. *Simmons v. O'Brien*, 77 F.3d at 1095. Defendants do not elaborate on this. Nonetheless, the Court need not consider collateral estoppel, as it finds no genuine issue of material fact on Mr. Dierks's claims against Mr. Cochran. Mr. Cochran is entitled to qualified immunity and summary judgment on Mr. Dierks's claims against him.

### B.    Tami King

Mr. Dierks alleges that Judge Edwards's clerk twice refused to file a motion of discovery (Dkt. No. 7, at 6, 8).  Ms. King is the White County Circuit Clerk.  At his deposition, Mr. Dierks testified that he intended to sue Judge Edwards's personal clerk, not the elected clerk for White County, if these individuals are not the same (Dkt. No. 42-1, at 4-5).  Accordingly, Ms. King is not the proper defendant.  Mr. Dierks never moved to amend his complaint or to have summons issued to the proper defendant.  Even if Ms. King were the proper defendant, Mr. Dierks has not stated a constitutional violation against Ms. King.  He simply claims that he does not know if paperwork was filed because he never received return copies of the paperwork he tried to file with the White County Circuit Court (*Id*. at 5).  In other words, he does not know that Judge Edwards's clerk or anyone in the White County Circuit Clerks' office refused to file a motion, as alleged in his complaint; he simply claims he did not receive return copies of some of his filings. The Court cannot discern a constitutional violation on these allegations.  Accordingly, Ms. King is entitled to qualified immunity and summary judgment on Mr. Dierks's claims.

### C.    Cleaning Supplies

Under the Eighth Amendment, prison officials "must provide humane conditions; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates . . . ."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotations omitted).  To succeed on an Eighth Amendment claim challenging the conditions of confinement, the prisoner must first prove that the conditions challenged were "objectively, 'sufficiently serious.'"  *Stephens v. Johnson*, 83 F.3d 198, 200 (8th Cir. 1996) (quoting *Farmer* 511 U.S. at 834).  "Extreme deprivations are required to make out a conditions-of-confinement claim."  *Hudson v. McMillian,* 503 U.S. 1, 9 (1992).  The

"Constitution 'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981)).

Secondly, the prisoner must show that the prison official acted with a "sufficiently culpable state of mind." *Stephens*, 83 F.3d at 200 (internal quotations omitted). "In prison-condition cases, that state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302-03). "[U]nder this subjective component, the prisoner must prove that a prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.'" *Stephens*, 83 F.3d at 200; *Farmer*, 511 U.S. at 842. The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. In defining "deliberate indifference," the Eighth Circuit has stated that it is clear that "mere negligence or inadvertence is insufficient to satisfy this standard." *Choate v. Lockhart*, 7 F.3d 1370, 1374 (8th Cir. 1993) (citing *Wilson*, 501 U.S. at 305; *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). "Thus, whatever its exact contours, deliberate indifference requires a highly culpable state of mind approaching actual intent." *Id.*

Inmates "are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Howard v. Atkinson*, 887 F.2d 134, 137 (8th Cir. 1989). Reasonably adequate sanitation is a basic identifiable human need of a prisoner protected by the Eighth Amendment. *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994). Mr. Dierks claims his constitutional rights were violated by being denied rags and cleaning supplies for cleaning the table tops in the pod. The Court finds that Mr. Dierks's

complaints regarding cleaning supplies fail as a matter of law to establish a claim for cruel and unusual punishment challenging the conditions of his confinement.

Mr. Dierks admits being given some cleaning supplies for the pod but claims these were for the toilet and that he was not told what chemicals were in these cleaning supplies. He claims that, without the supplies, he could not ensure that the eating surfaces were clean and states that he was worried about his health. However, Mr. Dierks has not identified any substantial risk to his health or safety regarding this complaint. He admits that he did not get sick and did not have to visit the jail doctor or nursing staff as a result of any event arising from this alleged deprivation of cleaning supplies. He does not claim, and has not presented evidence, that his health suffered as a result of the alleged denial of cleaning rags and cleaning supplies for the table tops. This does not create a genuine issue of fact that he was denied reasonably adequate sanitation, *Howard*, 887 F.2d at 137, or that any of the White County Defendants were deliberately indifferent to a substantial risk to Mr. Dierks's health or safety. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) (defendants entitled to judgment as a matter of law on claims of unsanitary living conditions and contaminated food where plaintiff presented no evidence that food was nutritionally inadequate or prepared in a manner that presented an immediate danger to his health or that his health suffered as a result). Accordingly, the Court grants summary judgment to the White County Defendants on these claims.

### D. Food Preparation and Service

Prison officials must also provide a nutritionally adequate diet. Control of the diet is within the discretion of prison authorities, presuming it is adequate. *Divers v. Dep't of Corr.*, 921 F.2d 191, 194 (8th Cir. 1990). To prevail on this issue, Mr. Dierks has to show that prison officials were deliberately indifferent to his dietary needs. *Wishon*, 978 F.2d at 449. A prisoner

is not guaranteed food that is "tasty or aesthetically pleasing," but the food must be "adequate to maintain health.'" *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998); *see also Burgin v. Nix*, 899 F.2d 733, 734-35 (8th Cir. 1990) (prisoner has no constitutional right to preferred type of meal provided meal is adequate).

Mr. Dierks claims that the food was inadequate in that it was too salty, included tomatoes, and that breakfast was served with out-of-date milk. He also complains of the "hotness" of the food. He does not state with specificity his objection to salt, and he has not claimed his health suffered from the milk or the temperature of the food. Mr. Dierks claims that he is allergic to tomatoes and that he requested through the medical department that he not be given food prepared with tomatoes. He alleges no adverse health effects from the food he was given, other than unsubstantiated claims that he suffered allergic reactions from the food he assumes was prepared with tomatoes or ketchup. However, he admits he never had to visit the jail doctor or nursing staff for these alleged reactions. This is not sufficient to show a deliberate indifference to Mr. Dierks's dietary needs or a deprivation that raises an Eighth Amendment violation. *Wishon*, 978 F.2d at 449; *Divers*, 921 F.2d at 194. The White County Defendants are granted summary judgment as to these claims.

### E.    Religious Services

Mr. Dierks alleges that Officer Madden and other officers at the White County Detention Center interrupted prisoners' prayer and religious services as an alleged deprivation of his First-Amendment free-exercise rights. "In a claim arising under the First Amendment's Free Exercise Clause, an inmate must first establish that a challenged policy restricts the inmate's free exercise of a sincerely held religious belief." *Brown-El v. Harris*, 26 F.3d 68, 69 (8th Cir. 1994); *see*

*Hamilton v. Schriro*, 74 F.3d 1545, 1550 (8th Cir. 1996); *Hill v. Blackwell*, 774 F.2d 338, 342–43 (8th Cir. 1985).  The Court assumes, without deciding, that Mr. Dierks's religious beliefs are sincerely held.  Nonetheless, Mr. Dierks cannot meet this threshold inquiry.  He has not claimed or shown a policy or practice that infringed upon a sincerely held religious belief.  He has not alleged that White County or any White County Defendant prohibited prayer services.  He merely alleges that the White County Defendants should not have brought cleaning supplies into the pod during prayer services because of the alleged distraction.  Moreover, Mr. Dierks admits he was not a participant of these prayer groups.  For this reason alone, he lacks standing to raise any claims that any defendants interfered with the prayer group.  Viewing the evidence in the light most favorable to Mr. Dierks and drawing all reasonable inferences in his favor, the Court finds no genuine issue of material fact as to Mr. Dierks's claims regarding the interruption of prayer services.  Accordingly, the Court grants summary judgment in favor of the White County Defendants on these claims.

### F.    Phone Use

Inmates do not have a right to unlimited telephone use.  *Benzel v. Grammar*, 869 F.2d 1105, 1108 (8th Cir. 1989).  Telephone access may be restricted so long as the restrictions are reasonable and rationally related to a legitimate penological interest.  *Id.*; *Turner v. Safley*, 482 U.S. 78, 89 (1987).  Mr. Dierks complains of a lack of choice among telephone providers, which he claims denied him potentially lower rates.  In other words, he complains of the price of the phone use.  His claims fail as a matter of law to state a constitutional violation.  Penal institutions do not have a constitutional obligation to provide telephone service at a particular cost. *Holloway v. Magness*, 666 F.3d 1076, 1080 (8th Cir.) *cert. denied*, 133 S. Ct. 130 (U.S. 2012). "The Constitution does not prohibit charging prisoners for essential prison services, at least in

the absence of a showing that the result is a severe deprivation of a fundamental right." *Id*.  The White County Defendants are entitled to summary judgment on Mr. Dierks's claims regarding phone use.

### G.   Mail Use

Mr. Dierks complains that his legal mail was opened and asserts that some of his legal papers were lost, causing to him to have to re-request forms for filing his complaint.  He also asserts that he was denied sufficient postage for legal mail while he was an indigent.  The Court finds that he has failed to create a genuine issue of material fact that his constitutional rights were violated with regard to the mail.

Inmates have a First Amendment right of free speech to send and receive mail.  *Hudson v. Palmer,* 468 U.S. 517, 547 (1984).  "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment." *Jones v. North Carolina Prisoners' Union, Inc.*, 433 U.S. 119, 125 (1977).  The Supreme Court has stated that "freedom from censorship is not equivalent to freedom from inspection or perusal." *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974).  "Non-privileged inmate mail is clearly not immune to inspection, thus such inspections cannot give rise to civil rights violations." *Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir. 1981).  "Privileged prisoner mail, that is mail to or from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner." *Id*.  However, "an isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation." *Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997) (contrasting the record in *Jensen*, 648

17

F.2d 1179, which "included evidence of deliberate, repeated opening of an inmate's confidential, well-marked attorney mail.").

With regard to postage, "indigent inmates have no constitutional right to free postage for nonlegal mail." *Hershberger v. Scaletta,* 33 F.3d 955, 956 (8th Cir. 1994). The courts have upheld limits on legal mail so long as the inmate's First Amendment right to access to the courts is not infringed. *See e.g.*, *Bell-Bey v. Williams*, 78 F.3d 832, 838-39 (6th Cir. 1996) (meaningful access provided when indigent prisoners are allotted ten stamps per month and additional postage may be loaned to prisoners); *Hershberger*, 33 F.3d at 956 n. 2 ("nor do we interpret the decision to say that no limits may be imposed on inmates desiring to make more than one legal mailing a week."); *Smith v. Erickson*, 961 F.2d 1387, 1388 (8th Cir. 1992) (policy of providing indigents with one free mailing per week for legal correspondence satisfies constitutional standards). To assert a successful claim for denial of meaningful access to the Courts, including claims related to interference with mail, an inmate must demonstrate that he suffered prejudice. *Gardner*, 109 F.3d at 431.

Applying these principles, Mr. Dierks has not created a genuine issue of material fact that his constitutional rights were violated as a result of his allegations of interference with his mail. The Court first notes that Mr. Dierks's claims that his *legal* mail was opened outside of his presence are misplaced. Here, he states that mail from a former employer regarding his W-2 and mail from the courts was opened. However, privileged legal mail means "mail to or from an inmate's attorney and identified as such . . . ." *Jensen*, 648 F.2d at 1182. Mr. Dierks has not claimed that mail to or from his attorney was opened. Moreover, even if legal mail was opened outside of his presence, Mr. Dierks has alleged only isolated incidents "without any evidence of improper motive or resulting interference with [his] right to counsel or to access to the courts"

that do not give rise to a constitutional violation.  *Gardner*, 109 F.3d at 430-31.  He has not identified evidence of an improper motive, and he conceded in his deposition that his access to the courts was not impacted.

Mr. Dierks's claims regarding postage likewise fail.  He stated he was given stamped envelopes for legal mail twice a week, even while indigent.  This meets constitutional standards. *Bell-Bey*, 78 F.3d at 838-39 (meaningful access provided when indigent prisoners are allotted ten stamps per month and additional postage may be loaned to prisoners); *Hershberger*, 33 F.3d at 956 n. 2 ("nor do we interpret the decision to say that no limits may be imposed on inmates desiring to make more than one legal mailing a week."); *Smith*, 961 F.2d at 1388 (policy of providing indigents with one free mailing per week for legal correspondence satisfies constitutional standards).  Mr. Dierks claims that he was later denied stamped envelopes when Captain Edwards said he was abusing the legal mail system.  However, he stated that this did not affect his ability to send mail, as he was able to buy his own stamps by that time.  Therefore, he admits no injury or impediment to his ability to send mail from this alleged denial.  *Gardner*, 109 F.3d at 431 (inmate claiming interference with access to the courts through interference with the mail must show actual prejudice).  Viewing the evidence in the light most favorable to Mr. Dierks and drawing all reasonable inferences in his favor, the Court finds no genuine issue of material fact as to Mr. Dierks's claims regarding mail.  The White County Defendants are entitled to summary judgment on these claims.

## H.    Access to the Courts

Prison officials may not deny or obstruct an inmate's access to the courts to present a claim.  *McMaster v. Pung*, 984 F.2d 948, 953 (8th Cir. 1993).  In order to state a claim an inmate must make some showing of prejudice or actual injury as a result of the prison officials' conduct.

*Id*.  Mr. Dierks in his complaint alleges that he was denied access to the Courts in that Judge Edwards did not respond to his request to fire his attorney or to his motions and that he could not give exact dates and times because there were no clocks or calendars in the pod (Dkt. No. 7, at 4).  The Court has previously dismissed the claims against Judge Edwards (Dkt. No. 35).  Mr. Dierks's complaint regarding dates and times is unclear.  At bottom, Mr. Dierks must demonstrate prejudice to state a claim for denial of access to the Courts.  He fails to state in his complaint how he was prejudice by the lack of clocks or calendars.  Accordingly, the Court grants the White County Defendants summary judgment on these claims.

## I.    Captain Edwards

In his complaint, Mr. Dierks alleges that Captain Edwards told him that he would be locked in a one-man cell if he wrote one more grievance or request (Dkt. No. 42, 1 at 34).  The White County Defendants do not specifically address this allegation.  The Court will consider whether these allegations even state a retaliation claim.  "Conduct that retaliates against the exercise of a constitutionally protected right is actionable . . . ."  *Nei v. Dooley,* 372 F.3d 1003, 1007 (8th Cir. 2004).  To succeed on a § 1983 retaliation claim, Mr. Dierks must prove that he engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against him that would chill a person of ordinary firmness from engaging in that activity.  *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007).  Captain Edwards's alleged threat to place Mr. Dierks in a one-man cell does not amount to "retaliation."  As another court in this district has observed, alleged threats to place an inmate in isolation, alone, do not amount to retaliation.  *Pruitt v. Norris*, 1:08-cv-00060, 2009 WL 103272 (E.D. Ark. Jan. 14, 2009) ("At most they were future threats of promised conduct and Plaintiff does not allege that either were carried out.").  To the extent these allegations amount to a claim, the Court finds no genuine

issue of material fact on Mr. Dierks's claims against Captain Edwards.  Captain Edwards is entitled to qualified immunity and summary judgment on Mr. Dierks's claims against him.

### J.      Officer Seanard

Mr. Dierks alleges that Officer Seanard made comments in responses to his grievances that insinuated that he was guilty.  He makes no other claims against Officer Seanard.  He has not stated a constitutional violation against Officer Seanard.  To the extent this involves the grievance process, Mr. Dierks has not alleged action that constitutes retaliation.  Officer Seanard is entitled to qualified immunity and to summary judgment on Mr. Dierks's claims.

### K.      Sheriff Shourd

Mr. Dierks stated that he believes that Sheriff Shourd is responsible for his employees and their actions (Dkt. No. 42-1, at 28).  In addition, Mr. Dierks said he could not get Sheriff Shourd to answer a grievance complaint (*Id*. at 28).  He said he mailed a grievance form to Sheriff Shourd and does not know if Sheriff Shourd received the grievance, but he never received a response (*Id*. at 28-29).  Mr. Dierks stated he never spoke face-to-face to Sheriff Shourd but would have dismissed the lawsuit entirely had Sheriff Shourd come to see him instead of "trying to shove everything underneath the carpet" (*Id*. at 30-31).

The Court finds that Mr. Dierks's claims against Sheriff Shourd fail to raise a genuine issue of material fact that Sheriff Shourd violated his constitutional rights.  Mr. Dierks's testimony indicates he attempts to hold Sheriff Shourd liable on a theory of *respondeat superior*, which is not cognizable under § 1983.  "Section 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights."  *Otey*, 121 F.3d at 1155. A supervisor can be liable for a subordinate's misconduct only if "he directly participated in the constitutional violation . . . or if his failure to train or supervise the offending actor caused the

deprivation." *Tilson*, 28 F.3d at 806-07.   A claim based on failure to supervise requires a showing that the supervisor: "(1) [r]eceived notice of a pattern of unconstitutional acts committed by subordinates; (2) [d]emonstrated deliberate indifference to or tacit authorization of the offensive acts; (3) [f]ailed to take sufficient remedial action; and (4) [t]hat such failure proximately caused injury to [plaintiff]." *Otey*, 121 F.3d at 1155.   Additionally, a supervisor may be held liable if he created a policy or custom under which the unconstitutional practice occurred.  *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).  Mr. Dierks has not pleaded or proven any facts that meet this standard.  To the extent Mr. Dierks's claim against Sheriff Shourd is based on an alleged failure to respond to a grievance, the Court finds no constitutional violation on these facts.  Accordingly, this claim is without merit.

*     *     *

For these reasons, the White County Defendants' motion for summary judgment is granted (Dkt. No. 40).  The White County Defendants are entitled to summary judgment on Mr. Dierks's official capacity claims, and the individual White County Defendants are entitled to qualified immunity and summary judgment on Mr. Dierks's claims against them in their individual capacities.   All other pending motions, including the White County Defendants' motion to deem facts admitted and to grant their motion for summary judgment, are denied as moot (Dkt. No. 45).   All of Mr. Dierks's claims against the White County Defendants are dismissed with prejudice.

SO ORDERED this the 29th day of October, 2013.

_____
Kristine G. Baker
United States District Judge